HOMER COOK V. THE STATE.

No. 15187. Delivered October 19, 1932.
Reported in 53 S. W. (2d) 612.

The opinion states the case.

*N. L. Dalby* and *E. Harold Beck,* both of Texarkana, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Under an indictment charging him with assault with intent to murder O. S. Pigg, appellant was convicted of aggravated assault, and his punishment assessed at confinement in jail for four months, and a fine of six hundred dollars.

Appellant lived across the street from the place of business of Mr. Pigg, the injured party. Two or three weeks before the difficulty, officers had made a search of Mr. Pigg's place of business in an effort to discover intoxicating liquor. Witnesses for appellant testified that, after the raid, the injured party stated in their presence that appellant was the s— of a b— who had caused the officers to make the search. The officers who made the raid testified that the injured party accused appellant of having been responsible for the search. It appears from the record that no liquor was found by the officers. After the raid, appellant and Mr. Pigg were not on friendly terms. Shortly before the difficulty, Mrs. Johnson, who had been in Mr. Pigg's store, was crossing the street. According to the testimony of the injured party and his wife, appellant's wife came into the street and slapped Mrs. Johnson. Mrs. Johnson called: "Oh, Mrs. Pigg, come here, come here." Mrs. Pigg approached, and, according to her testimony, asked Mrs. Cook to desist. Mrs. Cook replied: "She has been bothering my baby." She then said to Mrs. Pigg: "I guess you want some of it." At this point appellant came across the street. According to Mrs. Pigg,

appellant either shoved her or hit her, she was not sure about the matter, and she fell. Mr. Pigg then ran into the street with a pistol in his hand. Although he denied that he directed the pistol at appellant, appellant and his witnesses testified that he pointed the pistol at appellant, with the statement that he was going to kill him. According to Mr. Pigg's testimony, he merely held the pistol in his hand, saying to appellant, "Cook, you have gone far enough, I don't want any trouble." The testimony of Mr. Pigg and his wife was that at this point appellant ran to his yard and secured a shotgun; that the injured party went toward his place of business and was standing near a cold drink box when appellant raised the shotgun and fired across the street at him; that one of the shot struck him in the eye. We quote the testimony of the injured party, in part, as follows: "I fired then, when I saw he was going to fire. When I looked back he threw his gun up and then I fired. He already had his gun on me. He shot first. He shot two times, and I shot once. I was already shot when I fired."

Other state's witnesses testified that while the women were engaged in their difficulty appellant came to the scene and pushed Mrs. Pigg away from his wife. One of these witnesses for the state testified that after the parties had met in the street appellant walked to his yard and the injured party went to his place of business. He said appellant secured a shotgun which was in the edge of some weeds in his yard. We quote from the testimony of this witness as follows: "When he got the gun he took two steps toward the highway then he fired. I would not say whether he had the gun to his shoulder,—wouldn't say whether he had it to his shoulder or to his side. The gun was pointed straight at Mr. Pigg when he fired. I saw Mr. Pigg. He was right at the corner of his store right behind the coke box. He was in full view of Homer Cook from here up (indicating). Mr. Pigg was just looking. I believe Mr. Pigg had his gun up like this (indicating) when he turned around at the corner of the store. Yes I am certain about that, he still had his gun. I would not say who shot first, both shots were together. I don't believe there were but the two shots fired and they were fired together. If there were three it was awful quick."

Other witnesses testifying for the state said that it was impossible to tell who fired first.

Appellant testified, in substance, as follows: His wife went to the street to talk to Mrs. Johnson. Mrs. Johnson refused to stop, and his wife took hold of her. Mrs. Johnson then called

for Mrs. Pigg. When Mrs. Pigg reached the street a difficulty ensued between the women, and he went to the scene and tried to separate them. He did not strike Mrs. Pigg, and was not rough or rude in any way. Mr. Pigg ran out into the street with a pistol, drew it on him, and threatened to kill both him and his wife. He went into his house and secured a shotgun. Coming onto the porch, he could not see Mr. Pigg. When he got into his yard Mr. Pigg raised up from behind an ice box, which was in front of his place of business, with a pistol in his hand, and shot at him. He then returned the fire. He had nothing to do with having Mr. Pigg's place of business raided.

Appellant testified, on cross-examination, in part, as follows: "I went in there to get that gun to shoot with, yes. You say that I had no one in my mind except O. S. Pigg. No. I did not go to get the gun to shoot Mr. O. S. Pigg with unless he shot at me, or attempted to. You say that I went back in the house and he could not have shot me back in the house. No, but he could have shot my wife or something while I was gone."

It appears that appellant's wife was in the street at the time of the shooting. Several witnesses corroborated appellant's version of the transaction.

The court submitted an instruction covering the law of self-defense. Following this instruction the jury were charged as follows: "You are further instructed that if the witness O. S. Pigg had abandoned the difficulty, if any, which occurred west of his building, and returned to his store, and you further believe from the evidence that the defendant knew that the said O. S. Pigg had abandoned the said difficulty, if any, and that neither he, the defendant, nor his wife was then in danger of death or serious bodily injury at the hands of the said O. S. Pigg, and that thereafter the defendant shot the said O. S. Pigg with the intent to kill the said O. S. Pigg, then and in that event the defendant is not entitled to his claim of self-defense, if any."

The foregoing charge was timely and properly excepted to by appellant. The opinion is expresed that in giving the charge the court improperly limited appellant's right of self-defense. The testimony of the state and appellant showed that appellant was not armed when he went across the road to where his wife and Mrs. Johnson were engaged in the difficulty. According to all of the testimony, the injured party came rushing out, flourishing a pistol. All of the witnesses agreed that appellant went back across the road, either into his yard or into

his house, after Mr. Pigg came out with the pistol. It was after Mr. Pigg got back into his filling station and appellant came into his yard with a gun that the shooting took place. There was no shooting prior to that time. No blows had been passed between appellant and Mr. Pigg. The effect of the charge was that if the injured party had left the scene of the difficulty between the women, and appellant knew he had left such scene, and knew that neither his life nor that of his wife was in danger, he had no right of self-defense, notwithstanding the fact that the injured party might have fired upon him when he came to the edge of his yard with the shotgun. If appellant's testimony was to be believed, he had the right to arm himself and return for the purpose of protecting his wife, who was still in the street. Although the jury might have believed he had such right, and, further, have believed that the injured party fired the first shot when appellant was making no demonstration, yet, under the charge of the court, they could not have accorded the right of self-defense to appellant.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.